124 F.3d 203
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
CAISSE NATIONALE DE CREDIT AGRICOLE, a French banking
corporation, Plaintiff-Appellee,
v.
PRAXAIR, INCORPORATED, Defendant-Appellant.
 No. 97-1525.
 United States Court of Appeals, Seventh Circuit.
 Submitted March 10, 1997.*
Decided Aug. 21, 1997.
Rehearing Denied Sept. 18, 1997.
 
 Appeal from the United States District Court For the Northern District of Illinois, Eastern Division.
 Before ESCHBACH, FLAUM and MANION, Circuit Judges.
 
 ORDER
 
 1
 This is a successive appeal concerning the damages Praxair must pay plaintiff Caisse Nationale de Credit Agricole ("Credit").[1] In February 1991, Credit and CBI entered into a "swap" agreement, i.e., an agreement to exchange fixed-rate and floating-rate interest obligations. See Credit I, 90 F.3d at 1267. The parties agreed to exchange floating- and fixed-rate interest obligations for the next three years, ending on January 16, 1994. Credit also purchased from CBI an option giving it the right to enter a second swap agreement to begin on January 16, 1994, the date the first would expire, and to end on January 16, 1996. The deadline for exercising the option was January 16, 1994.
 
 
 2
 January 16, 1994 fell on a Sunday, and the next day was a federal bank holiday commemorating the birthday of Dr. Martin Luther King, Jr. On Tuesday, January 18, 1994, Credit's New York office telephoned a CBI subsidiary in Oak Brook, Illinois and attempted to exercise the option. The CBI subsidiary balked, telling Credit the option had expired on January 16 and that therefore it would not honor the terms of the 1994-96 swap. CBI confirmed its position the next day, January 19, 1994, in a letter to Credit.
 
 
 3
 Credit sued CBI in federal court alleging anticipatory breach of the option contract and seeking damages. The district court granted summary judgment to Credit, holding CBI liable for repudiating its option or "swap" agreement with Credit. We affirmed that judgment on appeal, but we reversed in part on the basis of Credit's cross-appeal concerning the computation of damages. We determined CBI was liable for damages beginning on the date CBI repudiated the agreement (January 19, 1994) rather than on the date Credit filed suit (the date the district court had chosen). On remand we left the damages calculation to the district court.
 
 
 4
 The exact type of damages owing to Credit was not at issue in Credit I. Credit and CBI had entered into an Interest Rate and Currency Exchange Agreement (IRCEA) that governed their swap transactions. After finding CBI liable for breaching the swap agreement, the district court awarded liquidated damages pursuant to the damage calculation provisions of the IRCEA. But in fixing the date of CBI's breach at January 19, 1994 and remanding to the district court for a redetermination of damages using that date as the date of default, we noted that "under New York law Credit is entitled to 'expectation damages,' which means Credit should be placed 'in the same economic position it would have been in had both parties fully performed." ' 90 F.3d at 1276 (citations omitted).
 
 
 5
 On remand, the district court used January 19, 1994 as the date of default and increased its award of liquidated damages under the IRCEA by $176,059.59. Praxair now contends that the district court awarded liquidated damages in disobedience to our decision in Credit I, which made reference to "expectation damages." Id. As Praxair puts it in its brief, the question is "whether this Court rejected the parties' and the district court's theory of [liquidated] damages and remanded for a redetermination of damages pursuant to a different theory." Reply Br. at 3.
 
 
 6
 The answer is no. The parties in this case agreed to liquidated damages, i.e., their actual damages in the event of a breach. Where the parties have agreed to certain damages, courts will enforce them so long as they are not unconscionable nor contrary to public policy. See Truck Rent-A-Center, Inc. v. Puritan Farms 2nd, Inc., 41 N.Y.2d 420, 424 (1977). Our opinion in Credit I did not mandate otherwise. Indeed, under Praxair's theory of expectation damages, payments that would have been made during the life of the repudiated agreement are reconstructed using historical interest rates, making unnecessary the entire discussion relating to the exact date (January 19, 1994, see 90 F.3d at 1274-76) CBI repudiated its agreement with Credit. The district court properly awarded Credit liquidated damages for CBI's breach, and this court will not recalculate those damages under another theory.
 
 
 7
 AFFIRMED.
 
 
 
 *
 This successive appeal has been assigned to the original panel under Internal Operating Procedure 6(b). The panel heard oral argument on the initial appeal and is unanimously of the view that a second oral argument is unnecessary. Accordingly, the appeal is submitted on the briefs and the record. See Fed.R.App.P. 34(a); Cir. R. 34(f)
 
 
 [1]
 CBI Industries, Inc., the defendant in the first case, Caisse Nationale De Credit Agricole v. CBI Industries, Inc., 90 F.3d 1264 (7th Cir.1996) ("Credit I"), merged into Praxair after the decision was issued